574 A.2d 96

**COMMONWEALTH of Pennsylvania**

v.

**Joseph VIDMOSKO, Appellant.**

Superior Court of Pennsylvania.

Argued March 6, 1990.

Filed May 2, 1990.

238

Joseph A. O'Brien, Scranton, for appellant.

Michael R. Goffer, Asst. Dist. Atty., Scranton, for Com., appellee.

Before McEWEN, MONTEMURO and CERCONE, JJ.

CERCONE, Judge:

This is a direct appeal from a judgment of sentence entered after a jury found appellant guilty of six counts of involuntary deviate sexual intercourse and three counts of criminal conspiracy. We affirm.

A criminal complaint was issued on September 16, 1985 charging appellant with four counts of involuntary deviate sexual intercourse,[1] four counts of indecent assault[2] and one count of corruption of minors[3] in connection with acts performed on a six year old girl. The criminal complaint also charged appellant with two counts of involuntary deviate sexual intercourse, two counts of indecent assault, and one count of corruption of minors for acts performed on the

1. 18 Pa.C.S.A. § 3123.
2. *Id.* § 3126.
3. *Id.* § 6301.

little girl's five year old brother. An information was issued on April 4, 1986 by the Lackawanna County District Attorney's Office charging appellant with criminal conspiracy[4] as well as with the crimes set forth in the criminal complaint. Certain charges, including the counts of indecent assault and corruption of minors were later dismissed by the Commonwealth because the statutory limitations period had elapsed.

Appellant initially pled guilty to criminal conspiracy, but was subsequently granted leave to withdraw his plea. An omnibus pre-trial motion was filed on September 6, 1987. In September of 1988 a jury trial commenced before the Honorable James Dwyer of the Court of Common Pleas of Erie County, specially presiding in Lackawanna County to hear this matter. The jury found appellant guilty on all the counts with which he remained charged, i.e., six (6) counts of involuntary deviate sexual intercourse and three (3) counts of criminal conspiracy. Appellant's timely filed post trial motions were denied on April 13, 1989 by the Honorable Carlon M. O'Malley of the Court of Common Pleas of Lackawanna County. Judge O'Malley sentenced appellant on July 19, 1989 to serve an aggregate term of twelve (12) to twenty-four (24) years in prison. The instant timely appeal followed in which appellant raises two issues for our consideration: (1) whether the trial court erred in denying appellant's request for a charge regarding the statute of limitations; and (2) whether the trial court erred in concluding that the prejudicial comments of certain Commonwealth witnesses did not require a new trial.

The first argument raised by appellant is that the trial judge should have charged the jury regarding the applicable statutory limitations period on the crimes for which he was tried. Appellant contends that the testimony of the child victims was inherently contradictory regarding the timing of the events underlying the criminal charges. The gravamen of appellant's complaint is that, as a result on the inconsistencies in the children's testimony, the jury could

**4.** *Id.* § 903(a)(1).

have concluded that the questioned events occurred in 1979 and 1980 rather than in 1982.[5] If the jury had determined that these events transpired in 1979 and 1980, the proper result would have been to discharge appellant as prosecution would have been time barred.

Appellant has waived his first argument by failing to raise this question before trial. The proper method for raising a statute of limitations defense is to file a pre-trial omnibus motion seeking a dismissal of charges. *Commonwealth v. Darush*, 501 Pa. 15, 20 n. 4, 459 A.2d 727, 730 n. 4 (1983). Appellant's pre-trial omnibus motion included no mention of the impact of the relevant limitations periods on the instant case.

Even assuming, *arguendo*, that appellant had preserved this claim, we could still grant him no relief. First, appellant's argument overlooks the facts that he signed a confession to the criminal activity with which he was charged and that this confession was admitted against him at trial. N.T. 9/20/88 at 33. Appellant's confession indicates that he perpetrated sexual acts upon the child victims during the spring and summer of 1982. *Id.* at 38–41, 57–58. Second, when testifying on his own behalf at trial, appellant indicated that he did not meet the children until after he moved to the same townhouse complex in which they lived. *Id.* at 164. Appellant also stated that he did not move to this townhouse complex until "late 1980." *Id.* at 161. Thus, appellant's own testimony indicates that he did not know the child victims until a point in time within five years of the date on which the criminal complaint was filed against him. Finally, our careful review of the record has convinced us that appellant is simply incorrect in contending that the victim's testimony was inherently contradictory.

5. Appellant argues that the crimes charged in the instant case are governed by a five year statute of limitations. *See* 42 Pa.C.S.A. § 5552(b). As the criminal complaint was filed against appellant on September 16, 1985, acts perpetrated prior to September 16, 1980 would have occurred beyond the limitations period.

■ Although the Commonwealth is required to establish the date of alleged offenses with reasonable certainty, young children are not required to testify regarding the exact dates of the sexual assaults they have endured. *See Commonwealth v. Fanelli,* 377 Pa.Super. 555, 547 A.2d 1201 (1988), *allocatur denied,* 523 Pa. 641, 565 A.2d 1165 (1989). The child victims who testified instantly were only five and six years of age at the time they were abused by appellant. The record reveals that on cross-examination, the young girl became confused by the barrage of figures and dates thrown at her by counsel for appellant. N.T. 9/19/88 at 130–159. However, the child never wavered in her testimony that the incidents involving appellant occurred when she lived in a foster home and visited her parents on a regular basis. *Id.* at 130–159, 164–166, 168–171. In a proper effort to clarify an apparent contradiction in the child's testimony, the trial judge asked her a brief series of questions which showed that the girl's parental visits occurred in 1982. *Id.* at 170. *See Commonwealth v. Roldan,* 520 Pa. 616, 554 A.2d 508 (No. 13 E.D. Appeal Dkt.1989, filed March 28, 1990) (trial judge may clarify a disputed point so long as he does not engage in lengthy or partisan examination of the witness). Thus, the girl's testimony clearly established that the offenses charged against appellant occurred after September 16, 1980. Despite appellant's assertions to the contrary, the boy's testimony corroborated the time frame established by his sister's statements.[6] *Id.* at 173–210. As no evidence was presented to the jury from which they could have concluded that the statute of limitations had run, the trial judge correctly refrained from charging in this regard. *Commonwealth v. Robinson,* 496 Pa. 421, 437 A.2d 945 (1981).

Appellant's second claim is that the trial court erred on numerous occasions in allowing several Commonwealth wit-

---

**6.** The child victims in this case were sexually abused over a lengthy period of time by many adults, including their mother and father. Unquestionably, the children testified to events that occurred earlier than 1982. This does not, however, change the fact that their testimony clearly indicates that *appellant* abused them during 1982.

nesses to make highly prejudicial comments. Specifically, appellant maintains that Paul Walker, Walter Carlson and Mary Curran were permitted to exploit their status as authorities on child abuse to enhance the credibility of the child witnesses. The gist of appellant's complaint is that Walker, Carlson and Curran were permitted to give opinions on the ultimate factual question of appellant's guilt, which should have been resolved by the jury.

Appellant cites *Commonwealth v. Russell,* 456 Pa. 559, 322 A.2d 127 (1974) for the proposition that it was improper for the witnesses to inform the jury that they had determined the children were telling the truth. We agree with appellant that in *Russell* our supreme court held that neither a district attorney nor a former district attorney may express his or her personal beliefs on issues of credibility which are within the sole province of the jury. We are mindful of our supreme court's directive that the admissibility of expert testimony in child abuse cases must be evaluated cautiously in order to prevent encroachment upon the jury's function by the unfair enhancement of a child victim's credibility. *See Commonwealth v. Gallagher,* 519 Pa. 291, 547 A.2d 355 (1988). *See also Commonwealth v. Gibbons,* 383 Pa.Super. 297, 556 A.2d 915 (1989) *allocatur denied,* 523 Pa. 647, 567 A.2d 651 (1989) (child abuse expert may not usurp function of jury); *Commonwealth v. Emge,* 381 Pa.Super. 139, 553 A.2d 74 (1988) (same). In the instant case, however, the record discloses no instance where Mr. Walker, Trooper Carlson, or Ms. Curran expressed their personal opinions on either the factual question of appellant's guilt or on the truthfulness of the children's testimony.

Mr. Walker, a former assistant district attorney, explained the nature of his involvement with the instant case and the procedures he followed to evaluate the accusations made by the children. N.T. 9/19/88 at 54–65. On direct examination, Mr. Walker indicated that extensive verification procedures were required by the Lackawanna County District Attorney's Office before bringing felony

charges against an accused. *Id.* at 63. During cross-examination, the following exchange took place:

Q. (by defense counsel): Now, is there anything in any of these statements that these children gave to you that indicate [sic] the date that these alleged offenses may have occurred?

A. (by Mr. Walker): There is nothing that would say that these offense occurred on a specific date. There are a number of factors which we took into account in trying to aarrive [sic] at a time period during which these offenses would have occurred.

Q. Now, there are dates set forth in the criminal information. Were they dates you decided on or dates that the children told you?

A. Well, they are dates that the children directed us to, but ultimately I believe that Trooper Carlson and I made the decision as to the dates as close as possible on which these events occurred.

Q. So the children never told you the dates?

A. Did the children tell us specific dates, no. The children didn't say these events occurred on March 4th, 1982. What the children did is to give us information from which we could derive a time period during which these events occurred.

Q. And did you *verify* any of that information?

A. If you are asking me to tax my memory, I believe we did, yes. And if you would like me to explain that, I will.

(by defense counsel): That is all I have.

*Id.* at 73–75 (emphasis added). On re-direct, Mr. Walker explained the procedures employed to verify the information given to him by the children. *Id.* at 76–82. When questioned as to whether the children's accusations were congruous, Mr. Walker responded that the answers of each child were "consistent" with the statements made by the other child. *Id.* at 81. We agree with the lower court's determination that Mr. Walker's testimony was merely in-

dicative of the fact that a meticulous investigation designed to safeguard appellant's rights had been conducted by the Lackawanna County District Attorney's Office. We see no indication that Mr. Walker was permitted to usurp the jury's function in any way.

We have carefully reviewed the parties' briefs and the record on appeal. Appellant's contentions with regard to the testimony of Trooper Carlson and Ms. Curran are simply not substantiated by the record. In response to allowable questions by both the prosecutor and counsel for the defense, Carlson and Curran properly related the procedures they followed in determining that the instant case should be prosecuted. N.T. 9/20/88 at 2–112, 113–138. Their testimony was neither "highly prejudicial personal opinion" nor did it improperly intrude upon the jury's function of evaluating the credibility of the victims.

The record reveals that the trial judge explicitly instructed the jury regarding their role as fact-finder and their responsibility to weigh and determine the credibility of the testimony presented to them.

So you have to decide on each case that is brought here whether or not the Commonwealth has met its burden.

Now your next question is, how do you determine what happened. You've heard different stories from the witness stand. You've got to determine what witnesses have been truthful, what testimony has been truthful. That is referred to as the credibility of the testimony or the witnesses. And it is *solely your function, you're the only ones that can determine who has been truthful and who has not been.*

N.T. 9/21/88 at 127–128 (emphasis added). Later, in the context of instructing the jury regarding factors to be considered in finding appellant guilty beyond a reasonable doubt, the trial judge also stated:

Another rule of law that pertains to the credibility of a witness is this: If you determine—and again, *this is solely your function* —if you determine that any witness has told you an untruth, has lied to you about any serious

charge in this case or any serious point, you have a right to disregard the entire testimony of that witness. You don't have to disregard it but you can.

*Id.* at 131–132 (emphasis added). Our review of the record has convinced us that not only were the prosecution witnesses never permitted to arrogate the functions of the jury, but that the trial court's instructions correctly emphasised and explained their proper role to the jury. We therefore affirm the action of the lower court on this issue.

Judgment of sentence affirmed.